**AMERICAN VISUALS CORPORATION,**
**Plaintiff,**

v.

**Frederick A. HOLLAND and Sam**
**Schwartz, Defendants.**

United States District Court
S. D. New York.

Nov. 26, 1957.

A. Walter Socolow, New York City, for plaintiff.

Mallin & Gross, New York City, for defendants.

THOMAS F. MURPHY, District Judge.

This action is for infringement of copyright, unfair competition and the misuse of confidential information by plaintiff's former employees. It relates to two pamphlets—plaintiff's pamphlet entitled "Killer in the Streets" and defendant Holland's "It Can't Happen to Us." Each pamphlet details pictorially in cartoon style three common types of highway accidents resulting from careless driving by members of one family.

Plaintiff originally moved before Judge Dawson for preliminary injunction, which was denied with opinion. D.C.S.D.N.Y.1954, 126 F.Supp. 513, 514. On appeal Judge Dawson's order was affirmed. 2 Cir., 1955, 219 F.2d 223.

Judge Dawson compared both pamphlets and found "An examination of these two books or pamphlets does not sufficiently indicate that the execution of the basic idea in the first book has been plagiarized in the other. * * * The fact that certain episodes are used which are typical of the dangers of careless or reckless driving is not, in and of itself, sufficient to indicate in a motion for preliminary injunction that the book in question was an infringement of the copyrighted book." He concluded on the infringement issue, "the treatment of the episodes in the second book is different. The art work is different. The composition is different. It thus does not appear that there is sufficient similarity in the execution of the work to justify the Court in reaching the conclusion on this motion for a preliminary injunction that the registered copyright has been infringed." On the other causes of action he found that there were sufficient issues of fact to warrant a trial.

On appeal, the Court of Appeals held that there was no abuse of discretion in denying injunction pendente lite. It went on to state, "Only the expression of ideas is copyrightable, and Judge Dawson was of opinion (126 F.Supp. 515)

[sic] that there was not 'sufficient similarity in the execution of the work' to show infringement. The pictures in the accused pamphlet are different from, and superior to, those of plaintiff's pamphlet. Even if some of the words ascribed to the pictured characters are sufficiently similar to suggest plagiarism, as to which it is unnecessary to express an opinion, the denial of a temporary injunction was proper, because the affidavits raise a question as to the validity of plaintiff's copyright on the ground that its pamphlet, under a different title, had been dedicated to the public by prior publication without any copyright notice. Furthermore, the affidavits do not show that money damages will not be an adequate remedy or that plaintiff will suffer irreparable injury if a temporary injunction is denied." [219 F.2d 224.]

Thereafter defendant moved for summary judgment on the ground that plaintiff's work "Killer in the Streets" was not published within the meaning of 17 U.S. C. § 10 and that the form of work rendered it not copyrightable. Judge Sugarman granted that motion in an unreported decision, and also held that in the absence of copyright jurisdiction he could not entertain the claim for misuse of confidential information and dismissed the fifth cause of action.

On appeal the order was reversed. 2 Cir., 1956, 239 F.2d 740. The Court of Appeals held that there was sufficient publication and that plaintiff had a valid statutory copyright; that the material was copyrightable and that even if there was no publication the court had jurisdiction of the non-statutory causes of action because of 28 U.S.C. § 1338(b).

Before discussion of the merits after trial some disposition must be made of the effect of the two opinions by the Court of Appeals insofar as they establish "the law of the case." We conclude it is no longer open to dispute that this court has jurisdiction on all causes of action and that plaintiff had a valid statutory copyright. No facts appeared on trial different from what the Court of Appeals relied on in arriving at this con-

clusion. The more troublesome question is whether anything Judge Dawson said in the District Court or anything the Court of Appeals said on the appeal from the denial of the injunction pendente lite is binding on the trial court insofar as issues of fact are presented. As we view it the only sentence that spells out a finding of fact in the Court of Appeals' opinion, 2 Cir., 1955, 219 F.2d 223, 224 is, "the pictures in the accused pamphlet are different from, and superior to, those of the plaintiff's pamphlet." But little time need be spent on this issue since it agrees with our finding.

█ Judge Dawson's finding that "an examination of these two books or pamphlets does not sufficiently indicate that the execution of the basic idea in the first book has been plagiarized in the other" is disturbing but, on analysis, not insurmountable. The most he says is that "an examination * * * does not sufficiently indicate * * * *" Obviously he was referring to the necessity on such a motion for a clear and convincing impression of plagiarism. In any event and with deference, we do not feel bound by any "law of the case" theory in view of the comparatively recent re-examination of that phrase by Judge Hand in Dictograph Products Co. v. Sonotone Corp., 2 Cir., 1956, 230 F.2d 131, 134–136, and accordingly we approach the merits of the controversy.

█ Plaintiff is engaged in the business of creating and selling illustrated books for industrial purposes. In 1950 it conceived and created an illustrated cartoon booklet on highway safety entitled "Sudden Death." Undoubtedly the title and the subject matter were prompted by the famous article entitled "And Sudden Death" published in the Reader's Digest in 1935. For a period of two years plaintiff restricted distribution of the pamphlet, still in rough dummy form, to a limited number of persons. In August 1952 defendant Holland, at that time one of plaintiff's salesmen, showed the pamphlet to a Mr. Browne of the Aetna Casualty Company who suggested a change of name to "Killer in the Streets." The name was changed and

the pamphlet "cleaned up" by plaintiff's other employee, defendant Schwartz, i. e., he redid some of the lettering and copying but none of the creative work. In September 1952 defendant Holland, on behalf of plaintiff, attended a convention of accident and casualty insurance companies in the Poconos, Pennsylvania, and distributed some 100 copies of plaintiff's pamphlet, still in dummy form, and induced an insurance association to distribute a similar number to its members. On September 25, 1953, Holland left plaintiff's employ and started a new business under the name and style of Frederick A. Holland Company, and within a short time thereafter published his pamphlet "It Can't Happen to Us", oddly enough for a group of insurance companies who, according to him, expressed no interest when "Killer in the Streets" was shown to them. It is undisputed that Schwartz did the actual art work in "It Can't Happen to Us" and that he was paid for his labor and is not a partner, nor did he share in the profits, of defendant Holland's publication and sale. His recollection was not clear as to whether or not he had "Killer in the Streets" before him at the time of the preparation of "It Can't Happen to Us", but we find as a fact that he did. His phrase was that he used plaintiff's pamphlet as an example of the thing not to do, but we find that he used it as a model.

Examination of both pamphlets, plus the fact of access, illustrate to us that Holland's pamphlet is a copy of plaintiff's although done in a much more artistic and professional manner. But this is not too important because plaintiff's pamphlet was a comprehensive rough dummy and we are satisfied that if plaintiff found a customer who accepted the substance of the work there remained the inking in of the pencil art work in preparation for engraving to put it in final form. Both pamphlets consist of pictorial illustrations in cartoon form of three typical traffic situations in which drivers' carelessness leads to accidents, with accompanying admonishments against improper use of motor vehicles. Both have a series of cartoons depicting

the father, mother and son of one family. Both concentrated on the same type of accident and carelessness. With little and innocuous changes in detail the story line in both is quite similar.

While it is undoubtedly true that only the expression of ideas is copyrightable we find as a fact that defendant Holland has stolen the expression of ideas in plaintiff's pamphlet and that his work "It Can't Happen to Us" infringes plaintiff's copyright in that he took a substantial part of plaintiff's execution for his own. He took the general style of the art work, dialogue and arrangement, the use of the family group and the characterization of the father as the road hog, the mother as the inattentive driver and the son as the youth heedless to mechanical imperfection. The only redeeming feature in the larceny is that the art work and composition of defendant's pamphlet is better. However, this is not sufficient to negative infringement.

With reference to the causes of action for unfair competition plaintiff's proof was clearly insufficient.

As to the fifth cause of action for misuse of confidential information it is obvious defendant Holland did exactly that, but plaintiff's damage, other than damages for infringement, is entirely speculative. We have serious misgivings as to whether Schwartz was a party to any conspiracy. Undoubtedly he did the art work but there was no betrayal of any confidential information. He had little or nothing to do with "Killer in the Streets" during all of the time he was in plaintiff's employ and under plaintiff's proof on trial acted merely as an independent contractor in doing art work for a fee and in no sense conspired with defendant Holland.

Since we find defendants infringed plaintiff's copyrighted pamphlet, plaintiff is entitled to an injunction and its damages are hereby assessed in the amount of $5,000, which sum appears to be just, together with costs, and a reasonable attorneys' fee, which we fix at $1,500.

Decree accordingly.